UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



ERIC WISE,

        Plaintiff,

v.                                  ACTION NO. 2:09cv351

K.M. WHITE,
PATRICIA STANSBERRY,
ALVIN EVANS,
ASSOCIATE WARDEN WALTON,
ASSOCIATE WARDEN ENGEL,
KEVIN KIDDY,
JAMES CUFFEE,
OFFICER FLEMMINGS,
OFFICER PURDIE,
UNKNOWN OFFICER ONE,
S.I.S. AGENT K. VAUGHAN,
RECREATION SPECIALIST A. GRAVES,
LIEUTENANT RICHARDSON, and
LIEUTENANT LESLIE,

        Defendants.

## OPINION AND DISMISSAL ORDER

Plaintiff, a Federal inmate, brings this pro se action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), to redress alleged violations of his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment.

### I. Procedural History

The full procedural history of this action is long and protracted. Therefore, the court will set forth only the basic procedural history necessary for decision on the current Motion for

Summary Judgment. The court's previous orders and the lengthy docket sheet in this case reflect the entire procedural history.

By Order entered July 7, 2010, the court granted Plaintiff's Motion to Amend to add three Defendants, Defendants Graves, Richardson and Leslie. By Order entered February 11, 2011, the court denied the original Defendants' Motion to Dismiss. By Memorandum Order entered September 2, 2011, the court granted Defendants Graves, Richardson, and Leslie's Motion to Dismiss and Motion for Summary Judgment. Therefore, the only remaining Defendants are the original Defendants. The original Defendants filed a Motion for Summary Judgment, Plaintiff filed a Response, and Defendants filed a Reply. Accordingly, this matter is ripe for judicial determination.

## II. Facts

The primary claim in Plaintiff's Complaint and Amended Complaint involves the level of environmental tobacco smoke ("ETS") to which he was exposed because of his cellmate's smoking and the general failure on the part of various Defendants to enforce the institution's no-smoking policy. Plaintiff portrays FCC Petersburg Medium ("Petersburg") as a "party prison" where security is lax, and drugs, alcohol, and tobacco are rampant.[1]

---

[1] In a document entitled "Petersburg-The Federal Party Prison," which Plaintiff submitted as "evidence" of the purported conditions, Plaintiff writes:

It's a typical weekend at FCC Petersburg - Medium. In

Petersburg instituted a no-smoking policy in 2004. Plaintiff entered Petersburg on March 13, 2008. Plaintiff initially shared a cell with an inmate that was homosexual. This made Plaintiff uncomfortable, and he requested a cell change. Plaintiff was moved. From April 8, 2008, through December 17, 2008, Plaintiff shared a cell with Farrell Shipley ("Shipley"). Plaintiff claims that, despite a no-smoking policy at Petersburg, Shipley smoked five packs of cigarettes a day as well as marijuana and drug-laced cigarettes. Plaintiff asserts that, though he verbally complained to various officers, staff at Petersburg would not enforce the no-smoking policy. Defendants contend to the contrary that the smoking policy was enforced, but that they never caught Shipley smoking or found contraband in his cell. In September, 2008, Plaintiff submitted grievances asking that the staff enforce the rules banning cigarette and marijuana use. Plaintiff included in his some of his grievances the allegation that Shipley smoked in

---

> the recreation yard, the DJ is spinning Caribbean music which blasts through a state of the art club sound system. The sweet scent of marijuana and wine wafts through the breeze as inmates pass the joints and liquor bottles.
>
> As the evening progresses, the Caribbean music becomes hip-hop and inmates, drunk and stoned, stumble around the yard cruising for homosexual liaisons which they consummate as festivities climax.
>
> . . .
>
> Pl.'s Ex. 35.

the cell. Plaintiff claims that he asked to be moved. However, Defendant Cuffee ("Cuffee"), who would have implemented the move, did not receive the alleged request. Thereafter, Plaintiff did not seek to be moved to a different cell. In fact, in several grievances, Plaintiff stated that he did not think he should be moved because he was following the rules. Moreover, during the months that Plaintiff shared a cell with Shipley, Plaintiff did not request medical treatment for symptoms related to exposure to ETS, nor did Plaintiff request to be moved to a different cell for medical reasons. On December 17, 2008, Shipley was released.

According to Plaintiff, during the time that Plaintiff and Shipley shared a cell, their cell was never searched, and prison personnel never investigated Plaintiff's claims that Shipley was smoking, never investigated Plaintiff's claims that prison officers were selling contraband, never investigated Plaintiff's claim that contraband was entering Petersburg through the warehouse, and never investigated Plaintiff's claims that individuals in the free world were laundering money for inmates and sending contraband to inmates.

### III. Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25.

When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993). Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.[2]

Although a court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252.

**B. Applicable Law**

**1. Eighth Amendment**

Plaintiff claims that the Eighth Amendment was violated by the conditions of his confinement because he was exposed to ETS. To

---

[2]Recent amendments to the Federal Rules of Civil Procedure, which became effective on December 1, 2010, moved the relevant language from section (c)(2) of Rule 56 to its present location in section (a). However, the advisory committee's note indicates that, despite these amendments, "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

establish a § 1983 claim concerning constitutional violations with respect to prison conditions, a plaintiff must show: (1) a serious deprivation of a basic human need; and (2) deliberate indifference by prison officials to that need. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981), and Wilson v. Seiter, 501 U.S. 294, 303 (1991), respectively). The inmate must be denied "the minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298, and the deprivation must violate contemporary notions of decency. Rhodes, 452 U.S. 337 (although the conditions may be restrictive and even harsh, they are part of the penalty that criminal defendants must pay for their offenses against society). Rather than look at each alleged act individually, the court must employ a "totality of the circumstances" approach to properly analyze the constitutionality of prison conditions. Rhodes, 452 U.S. at 347. In addition, plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged cruel and unusual prison conditions. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). Plaintiff may also satisfy the injury requirement by proving that future serious injury is likely to occur. Helling v. McKinney, 509 U.S. 25, 33 (1993) (citing Hutto v. Finney, 437 U.S. 678, 682 (1978)).

The Supreme Court of the United States addressed the issue of prisoners' exposure to ETS in Helling. The Court held that an

inmate "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Helling, 509 U.S. at 35. The Court further held that inmates must prove both the objective and subjective components of an Eighth Amendment violation. With respect to the objective factor, an inmate must demonstrate that he has been exposed to unreasonably high levels of ETS. Id. at 36. Importantly, the Court elaborated on what an inmate must show:

> Determining whether an inmate's conditions of confinement are cruel and unusual requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that exposure will actually cause injury to the inmate's health. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

Id. With respect to the subjective factor --- whether defendants were deliberately indifferent to plaintiff's exposure to ETS --- proper consideration should be given to institutional policies regarding smoking and the realities of prison administration. Id. at 36-37.

### 2. Qualified Immunity

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see also</u> <u>Butz v. Economou</u>, 438 U.S. 478, 500-01 (1978) (explaining that the qualified immunity doctrine developed for § 1983 actions apply to <u>Bivens</u> suits). In <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991), the United States Supreme Court observed:

> A necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.

<u>Id.</u> at 232. The Supreme Court has held that "a ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).

The defense of qualified immunity may be a basis for summary judgment. <u>Harlow</u>, 457 U.S. at 815-16; <u>see also</u> <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 261 (4th Cir. 1991) ("[A] particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment."). In determining whether a defendant is entitled to qualified immunity, the Supreme Court developed a two-part test. <u>Saucier</u>, 533 U.S. at 200; <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 301 (4th Cir. 2004). First,

the court must determine whether the facts alleged by the injured party show that the government official's actions violated the injured party's constitutional rights. Saucier, 533 U.S. at 201; Parrish, 372 F.3d at 301. If the court concludes that no constitutional right was violated, there is no need to continue through the remainder of the inquiry into qualified immunity. Saucier, 533 U.S. at 201. The Court's decision in Pearson v. Callahan does not change the foregoing analysis. Pearson v. Callahan, 555 U.S. 223, 236 (2009) (finding the two-prong test to still be appropriate in some circumstances).

### C. Discussion

The Constitution does not protect inmates from all exposure to cigarette smoke. The Constitution protects an inmate from levels of ETS that pose an unreasonable risk of serious damage to future health. Id. at 35. The prisoner in Helling complained of exposure to ETS resulting from his cellmate smoking approximately five (5) packs of cigarettes a day. Coincidently, Plaintiff claims that Shipley also smoked five packs a day.[3]

---

[3] The court is not aware of the cost to purchase cigarettes illegally in prison. However, a five-pack-a-day habit in 2008 would have cost approximately $570.00 a month if the cigarettes were purchased legally in the free world at $3.80 per pack. See http://doh.state.fl.us/tobacco/PDF_Files/Trends_CigarettePrices_Promotions_SalesFL_RetailScannerData.pdf, p. 6, Fig. 4., showing that the average price of cigarettes in United States in 2008 was $3.80. Given Plaintiff's assertion that prison personnel were making a fortune selling cigarettes to Shipley, there was clearly a significant mark-up on the price. Plaintiff submitted a number of Shipley's canteen receipts, showing his inmate account balance

In the court's February 11, 2011, Order, the court explained that, given the Supreme Court's instructions in Helling, the Motion to Dismiss was being denied to allow Plaintiff the opportunity to present proof to support his allegations and proffer evidence that he had suffered harm and was likely to suffer future injury from ETS. Rather than focus on these evidentiary concerns, Plaintiff chose to focus on maligning Defendants' characters and proffering "evidence" to support his contention that Petersburg is a party prison staffed by corrupt officers and administrators.

Plaintiff disputes virtually every fact set forth by Defendants. For instance, Defendants claim they enforced the no-smoking policy, and Plaintiff claims that they did not enforce the policy. Defendants claim that Plaintiff and Shipley's cell was searched for contraband, and Plaintiff asserts the cell was never searched. The court has considered all of Plaintiff's disputes with Defendants' facts. In spite of Defendants' objections to the admissibility of some of the evidence proffered by Plaintiff, the court has considered all of the affidavits and exhibits submitted by Plaintiff. The one overarching conclusion that the court has

---

decreasing each month somewhat more than just the canteen purchases. However, the decreases to not correspond to anything remotely equivalent to the cost of five packs a day of legal cigarettes, much less the cost of contraband cigarettes. Plaintiff may have overestimated Shipley's smoking habit. However, for purposes of this summary judgment, the court considers Shipley to have been a very heavy smoker.

11

reached is that Plaintiff is a master of semantics and tautological arguments.

Defendants contend that Plaintiff never asked for a cell transfer. Plaintiff claims that he did request a cell transfer, and offers as proof his exhibit 12, an inmate request form, to which Plaintiff never received a response. Defendant Cuffee, to whom the request is addressed, states in his affidavit that Plaintiff did not provide him with the form. Cuffee Aff. ¶ 27. There is nothing in the record to suggest that Plaintiff ever followed up on his request for a cell change or that he filed any formal grievance protesting the failure to change his cell. Plaintiff counters by stating it does not matter because he would not have been granted a transfer. Plaintiff claims that another inmate had supposedly asked for a cell transfer, and that inmate had not received the requested transfer. However, Plaintiff requested a cell transfer when he felt uncomfortable with his first cellmate's homosexuality, and that transfer was granted.

Plaintiff also argues that he requested that Shipley be moved. However, Defendant Cuffee explains that he does not move an inmate based on a cellmate's request unless there is a substantial reason, because moving one inmate based on the unproven complaints of his cellmate is likely to provoke a disturbance. Id. ¶28. Cuffee further explains that inmates sometimes become attached to a cell,

12

and he does not believe that an inmate should be able to dictate who will share their cell. Id.

Plaintiff was advised several times that, if he believed that cigarette smoke was harming him, he should submit a sick call request and ask for a medical transfer. Plaintiff did not present to medical with any complaints about reactions to tobacco smoke or fears about future harm from tobacco smoke, and he did not request a medical cell transfer. Plaintiff argues that it does not matter because he would not have been given a medical cell transfer. As proof of his contention that he could not have obtained a medical transfer, Plaintiff submits a June, 2011, email exchange between him and Dr. Hall. In the email, Plaintiff states:

> Pursuant to our discussion on this yesterday, if I have a smoking cellmate (1) I cannot get a medically based cell transfer to a non-smoking cell and (2) the solution to such an issue is to have rules prohibiting smoking enforced. Correct?
>
> I agree with you on this by the way. You couldn't transfer me to a non-smoking cell anyway as they are all non-smoking cells by rule. I just want to show your response to my unit officers who are trying to pass the buck on to medical because they're too lazy to enforce rules.

Doctor Hall responded: "We cannot transfer you to a non-smoking cell as all the cells are non-smoking." At most this shows that Dr. Hall believes that all cells are non-smoking cells, and therefore, a transfer to a non-smoking cell is meaningless. This does not prove that a doctor would not have ordered a transfer to a different cell had Plaintiff requested such a transfer in 2008. Moreover, the fact

remains that Plaintiff did not even attempt to obtain a medical transfer.

Plaintiff's failure to report to medical has other implications as well. Plaintiff never sought treatment for symptoms related to exposure to ETS. Given the extreme level of ETS that Plaintiff claims he was subjected to and Plaintiff's claims that he suffered allergy-like symptoms, a reasonable person would have sought medical treatment. Plaintiff's failure to seek medical treatment leaves his allegations of allergic reactions unsupported. Moreover, if Plaintiff's symptoms were so mild that medical care was not required, there is little or no evidence to support a claim of future harm.

The court specifically gave Plaintiff an opportunity to present evidence to support his claim of future harm. Plaintiff submitted "evidence" in the form of the prepared remarks of the Surgeon General at a press conference to launch his report on the health consequences of involuntary exposure to tobacco smoke, wherein the Surgeon General states that "[t]here is no risk-free level of secondhand smoke exposure." Pl.'s Ex. 62. However, the Constitution does not protect inmates from all exposure to cigarette smoke. An inmate is protected from levels of ETS that pose an unreasonable risk of serious damage to future health. Id. at 35. Plaintiff proffered nothing else to meet this standard.

14

Plaintiff alleges that cigarettes and drugs were openly used by inmates at Petersburg. Plaintiff submits affidavits of other inmates to support his contentions. However, the only person that is identified as a smoker in these affidavits is Shipley. Plaintiff also submitted emails from 2011, wherein he reports observing various officers smoking in unauthorized areas. However, he does not submit evidence of observing other inmates smoking. There simply is no evidence of other inmates smoking.

Plaintiff contends that Defendants were deliberately indifferent to the risk of harm Plaintiff may suffer in the future as a result of exposure to ETS. However, the most that can be established from the evidence in this case is that Plaintiff was exposed to some illicit ETS, Plaintiff sought no treatment for any medical conditions resulting from exposure to ETS, and Plaintiff did not pursue means to obtain a transfer to get away from the ETS. Plaintiff did submit complaints about ETS. However, most of those simply alleged that illicit smoking was occurring and harangued officers for not doing their jobs.

Defendants have admitted that illicit smoking does occur on occasion at Petersburg. However, and importantly, nothing in the record indicates that Defendants were aware of the excessive amount that Shipley was allegedly smoking, or that, when Plaintiff failed to pursue the means to protect himself from ETS, Defendants should have perceived the possible harm and taken action. If Plaintiff was

exposed to unreasonably dangerous levels of ETS, there is no evidence, other than Plaintiff's unsupported claims, to suggest that Defendants knew he was exposed to such high levels of ETS or had any reason to appreciate any increased risk, especially given Plaintiff's failure to seek medical care for any ETS related harm. Plaintiff claims that Defendants failed to investigate information he provided to them about contraband and dealers in prison and in the free world. Even if this is true, it does not change the analysis. Plaintiff alleges nothing that would indicate that if Defendants had investigated Plaintiff's information, they would have realized that Shipley was smoking five packs a day in a non-smoking prison and that Plaintiff might be at an increased risk of future harm.

At the heart of the qualified immunity issue is the question of "whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson, 202 F.3d at 736. Based on all the evidence in this case, the court **FINDS** that Defendants could reasonably have believed that their actions conformed to the Constitution. Accordingly, Defendants are entitled to qualified immunity.

### IV. Conclusion

For the foregoing reasons, the court **GRANTS** Defendants' Motion for Summary Judgment.

Plaintiff is **ADVISED** that he may appeal from this Opinion and Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Opinion and Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Dismissal Order to Plaintiff and counsel for all Defendants.

IT IS SO **ORDERED**.

Norfolk, Virginia

February 24, 2012

/s/
Rebecca Beach Smith
Chief
United States District Judge

17